## Union Water Power Company

*vs.*

### Ransom C. Pingree, and another.

Androscoggin.    Opinion April 21, 1898.

*Lease.    Water-Rent.    Covenant.    Recoupment.*

The defendants, intending to erect and operate mills for the manufacture of lumber on a lot leased to them by another party, in pursuance of such inten-tion, leased from the plaintiffs a certain measure of water-power, being the right and privilege of taking water for their mills through one of the flumes upon one of the canals appertaining to the water-works belonging to the plaintiffs, situated in Lewiston on the Androscoggin river; the leased prem-ises including flume, water-wheels, shafting and buildings necessary thereto. The lessors were to make all renewals and extraordinary repairs, and the lessees all ordinary repairs, during the term of the lease. Midway in the life of the lease all the leased buildings and fixtures belonging to the lessors, as well as the mills belonging to the lessees, were partially if not totally destroyed by an accidental fire, and renewals and extraordinary repairs became immediately necessary, should the manufacturing business be con-tinued; but none were made. Certain things soon transpired which made it for the interest of both parties not to further continue the lease, and neither party undertook to do anything for the restoration of the property.

It is held to be doubtful, on these facts, whether a covenant to pay rent was binding for any period after the date of the fire, because the premises upon which the lease subsisted were of such a transitory character.

But if rent be recoverable, then the defendants may recoup against the rent for the damages occasioned by a breach of the covenant to repair made by the plaintiffs in the same lease, whether the latter covenant be regarded as an express or implied one.

Nothing appearing to the contrary, the damages sustained by the one party will be presumed to be in amount the same as those of the other, the claim and cross-claim being regarded as equal if not quite alike.

On Report.

This was an action of assumpsit, as permitted under the statutes of Maine, to recover rent due upon a sealed lease between the parties.

The case is stated in the opinion.

*W. H. White and S. M. Carter*, for plaintiff.

By the common law, in the absence of any stipulation in the lease to the contrary, the duty to repair leased premises is cast upon the tenant, and that too, notwithstanding the premises may be destroyed by flood, fire 'or tempest. *Hill* v. *Woodman*, 14 Maine, 38; *Libbey* v. *Tolford*, 48 Maine, 316; *Gregor* v. *Cady*, 82 Maine, 136.

The provision in the lease of 1889 that the lessees should make all repairs, only expressed what was their legal obligation in the absence of any provision in the lease to save them from this duty.

Nor is a tenant relieved from his covenant to pay rent by the destruction of the premises by fire unless he saves himself by some stipulation to that effect in the lease. Where a tenant covenants to repair,—casualties by fire or tempest excepted—if he also covenants to pay rent he shall be holden to pay notwithstanding the premises may be burned or blown down. *Hill* v. *Woodman*, supra; *Libbey* v. *Tolford*, supra, and cases cited; *Viterbo* v. *Friedlander*, 120 U. S. 712; *Fowler* v. *Bott*, 6 Mass. 63; *Kramer* v. *Cook*, 7 Gray, 550; *Leavitt* v. *Fletcher*, 10 Allen, 119; Taylor's Landlord & Tenant, § 375.

The only exception to this rule is where the subject matter of the demise is entirely destroyed, in which case it has been held that the lease perishes with it. Taylor's Landlord & Tenant, § 520.

Such was the case of *Waite* v. *O'Neil*, 76 Fed. Rep. 408. In

this case the court found that the landing, which was the subject matter of the lease, "was effectually destroyed by the ravages of the river." Instead of a landing, where boats could load and unload, which was the condition when the lease was made, there remained only a vertical bluff, 60 or 80 feet high. The landing had disappeared from the face of the earth. "Nor was it possible by reasonable effort to make a landing."

It also held in *Stockwell* v. *Hunter*, 11 Metcalf, 448, and kindred cases, that where one leases a room in a building and the building is destroyed by fire, he is relieved of his obligation to pay rent. These cases seem to go upon the ground that there is such a destruction of the land or thing granted as to amount to an eviction.

But no such conditions as these exist in the case at bar. The principal thing granted was the right to take, draw, and use a quantity of water from the canal of the lessor. The fall of this water upon the wheel created the power which, transmitted upon a shaft, turned the machinery in the lessee's factory. The fire destroyed some of the structures and appliances by which this power was transmitted. A week or two of time and the expenditure of a few hundred dollars in money would have restored the premises to as good condition as they were before the fire, so that the tenant could have enjoyed all the uses and benefits of the rights and property conveyed to him by the lease as effectually as at any time before the fire.

There never was an hour when the lessor could not supply the water to turn the wheel, and it was ready and willing and able at all times to fulfill and perform its part of the contract. Of course the lessees did not want the water or the power created thereby until they had some place to use and apply it, but that was not the fault of this lessor. Whenever the lessees saw fit to call for the water the lessor was ready to furnish it.

. The agreement of April, 1893, became a separate and independent contract between the parties. Therefore any neglect or omission on the part of the plaintiff to make extraordinary repairs could not affect the original lease or excuse these defendants from

paying the rent reserved in that lease. If the plaintiff was guilty of any laches in keeping any covenant in the agreement of April, 1893, it might under proper circumstances prevent the plaintiff from recovering from the defendants for the compensation agreed upon between them, but it could not affect the original or water lease.

*J. A. Morrill*, for defendants.

The general principle of liability on the part of the lessee to pay rent according to his covenant does not apply in cases where the land is not leased, or in those cases where the land is considered as the mere incident, and consequently, that the interest of the lessee in it is defeasible upon his ceasing to have the use of the buildings. Frequent examples of the application of this principle are found in the cases of leases of apartments or offices in buildings in cities. *Kerr* v. *Merchants Exchange Co.*, 3 Edward's Chancery, 315, and cases in the note, Book 6, page 672 of the lawyer's edition. Or in the case of a lease of a basement. *Stockwell* v. *Hunter*, 11 Met. 448; *Winton* v. *Cornish*, 5 Ohio, 477; *Graves* v. *Berdan*, 26 N. Y. 498; *Harrington* v. *Watson*, 11 Oregon, 143, (50 Am. Rep. 465.)

It is plain and beyond dispute that the Union Water Power Company by its officers or agents took possession of these ruins after the fire, and that they did it without saying anything whatsoever to the tenants.

It is said in *McGaw* v. *Lambert*, 3 Penn. St., 445: "If the landlord takes possession of the ruins for the purpose of rebuilding without the consent of the tenant, it is an eviction of him. If with his consent, it was a rescission of the lease, and in either case the rent is suspended." And in *Graves* v. *Berdan*, 26 N. Y., 498, it is said that even if the lessee's interest in the demised premises in a case like this was not terminated by the total destruction of the building, it may be doubted whether the lessor could receive rent so long as he failed to give to the demised upper rooms the support necessary to them for special enjoyment.

Counsel also cited: *Prescott* v. *Otterstatter*, 85 Pa. St. 537.

Recoupment: *Holbrooke* v. *Young*, 108 Mass. 83; *Myers* v. *Burns*, 35 N. Y. 269; 1 Wash. R. P. 4th ed. 527.

SITTING: PETERS, C. J., HASKELL, WISWELL, STROUT, SAVAGE, JJ.

PETERS, C. J.   In 1890 the defendants simultaneously obtained from the Franklin Company, a land company, a lease of a lot of land in Lewiston upon which to establish a mill plant for the purpose of manufacturing lumber, and from the Union Water Power Company, a water company, a lease of a certain amount of water privilege sufficient to furnish power with which to carry on the contemplated manufacturing.   The leases were for ten years, though that from the Franklin company was sooner terminable upon certain conditions, and that from the Water Power company could be terminated by the defendants at any time when the other lease might from any cause come to an end.   The plaintiffs leased to the defendants "the right, privilege and easement of taking, drawing and using from the cross-canal No. 1, so-called, of the Water Power Company, in said Lewiston, through the flume now existing on the northerly side of said cross-canal No. 1, a quantity of water not exceeding one hundred horse-power during every twelve hours of each and every secular day for running machinery and manufacturing purposes upon the premises known as the Mill lot, and leased by the said Pingree & Co. of the Franklin company . . . ."   "Also the water-wheels and shafting connected with said flume, and the buildings over the same.   Said flume, water-wheels, shafting and buildings to be taken by the said Pingree & Co. as they now exist."

The defendants at once entered into possession of the leased premises and commenced to make changes and improvements therein until in April, 1893, to use the words of plaintiffs' brief, they had "entirely reconstructed the appliances and structures used for conveying the water from the canal to the wheels and for the transmission of the power from the wheels to their factory on the Mill lot."   To compose some differences that had meanwhile arisen between the parties, the defendants, for the sum of $3000.00,

in April, 1893, made to the plaintiffs a written sale of these improvements describing the same thus: "The new iron feeder connecting the forbay of the Union Water Power Company on Canal No. One in said Lewiston with the Wheel-house described in the lease from said Union Water Power Company to said R. C. Pingree & Company, which feeder was put in by said R. C. Pingree & Company in 1892. Also the new wheel, gears, boxes, shafting and all other improvements put in said wheel-house by said Pingree & Co. in 1890 as far as the line of the Union Water Power Company land. Also the regulator attached to said wheel and all the pulleys, gearing and appliances connected with the wheel and necessary for the regulator's proper use and operation and which were put in by said Pingree & Company in 1890."

This sale was coupled with a contract between the parties by which it was agreed, among other things, that, in addition to the rent specified as payable under the terms of the lease, the defendants should annually pay another sum which would be equivalent to interest on $3000.00, for the use and enjoyment of the purchased·property. In the same agreement it was mutually stipulated that Pingree & Company (defendants) "should make all ordinary repairs upon the machinery and property above described at their own cost and expense, and that the plaintiff company should make all renewals and extraordinary repairs" on the same.

January 29, 1896, the factory and entire manufacturing plant of defendants on the Mill lot were lost by fire, and "practically it may be said that all the appliances and structures for the transmission of power from the wheel to their factory were also destroyed." The loss on the fixtures owned by plaintiffs, but used by the defendants, is computed by the counsel for plaintiffs at six hundred dollars, the counsel on the other side estimating such loss at a considerably larger sum. The defendants did not rebuild their factory, nor make any use of the water power after the fire, but did some manufacturing on the premises for a while afterwards by the use of some steam power borrowed for the purpose. Nor did the plaintiffs ever make the renewals or extraordinary repairs called for by the agreement before named, and without such the defendants

could make no use of any water power on their property.  The
lease from the Franklin Company became terminated in the season
of 1896, and the properties covered by the two leases were aban-
doned by the defendants before the close of that year.  Thereupon
the plaintiffs, by their writ dated November 20, 1896, sue for the
recovery of a "water-rent" for nine months ending November 1,
1896, amounting to about $600.00, and for one year's rent or inter-
est on the $3000.00, making $150.00 besides.

The defendants contend that they have been absolved from all
liability for the payment of rent.  There is certainly in equity and
justice much reason why they should not be responsible for rent,
having had no beneficial use of the leased property after the fire.
A possession of the water-power by the lessees before permanent
repairs were made would be an impossibility, and it may well be
presumed that that portion of the water which the defendants
ceased to receive went for the plaintiffs' benefit through other dis-
tributions from the same canal.  Closing the flume appropriated
for the defendants' use would as a matter of course create more
pressure in other flumes in the same dam or canal.

There cannot be any doubt that the two papers, lease and agree-
ment, are to be construed as dependent parts of one contract.
They together became an entirety.  There is a clause in the agree-
ment which prescribes that the lease shall remain in full force and
effect, "except so far as any provisions thereof may be inconsistent
with the agreement."

The plaintiffs, in excuse for their omission to restore the prem-
ises to the condition in which they stood before the fire, assert that
they were not requested by the defendants to rebuild.  Neither
were they notified by them not to rebuild.  It was true, no doubt,
that the lessees preferred to be released from their covenants unless
an extension of their leases could be effected with both companies.
And it is also just as evident that the plaintiffs were not inclined
to incur the cost of making the extraordinary repairs, unless the
lessees obtained an extension of the lease from the Franklin Com-
pany, lest by the termination of that lease their own lease might
be prematurely ended, and they thereby, if restoration were

executed, have an expensive and to them useless property on their hands. The plain truth is that it appeared to be for the interest of both the lessors and lessees that the lease be at once terminated and the premises surrendered. But it by no means follows, and there is nothing to be seen indicating it, that the defendants would not have succeeded in making the property earn the rent resting on it, had the work of reconstruction been seasonably executed by the plaintiffs. There are also clauses in the lease, not before noticed, which are illustrative of this equitable view of the respective rights of these parties. One such clause is the provision that, if the lessors fail or are unable to furnish and supply the quantity of water needed by the lessees for running their machinery and for their manufacturing purposes, not exceeding one hundred horse-power, then a just and proportional part of the rent reserved shall be abated by the lessors. Another such feature in the lease is that which provides for a surrender of the premises at the end of the term in good order and condition, "inevitable accident excepted"— and this fire for which no cause could be discovered must be imputable to some inevitable accident. These ameliorations of the old harsh and technical forms indicate that rent was not expected unless a reasonable use of the premises were enjoyed.

Upon these facts and considerations it is claimed, in behalf of the defendants, that their covenant to pay rent does not bind them for any period beyond the destruction of the premises by fire because the subject-matter of the demise no longer existed, the water not being a substantial thing as land and the structures which facilitated the use of the power being only incidental to it. In support of this point our attention is called to the fact that only a fragment of the whole water power was leased to the defendants, subject to all superior rights possessed by persons and corporations by virtue of prior leases, and the Water Power Company retaining the general control of its dams, canals and other fixtures in its own hands. The defendants cite cases bearing more or less resemblance to present facts where it has been held that an exception to the rule of liability applied. The position taken strikes us with much

force, but we will not further consider its fitness here as we prefer to place the result on another ground which may be regarded as less questionable.

The defense, looking at the case in another aspect, further contends that the inattention and indifference manifested by the plaintiffs in omitting to raise a finger towards any restoration of the demised premises after the injury thereto by fire, although bound by their covenants to make the same tenantable, constituted a degree of negligence that operates as a constructive eviction or ouster of the defendants, and such as would excuse them from the payment of rent. Much perhaps may be urged on either side of this proposition, but, as some opposing technicality lies in the way of it, while we mention it as casting some light upon the general discussion of the case, we prefer to decide the issue here upon the reasonable rule adopted by Prof. Washburn in his work on Real Property, cited by counsel, where the author says: "Nor would the non-completion of the building be a defense in an action for the rent. But if one is sued upon a covenant for rent, he may recoup for damages occasioned by a breach of other covenants in the same lease, though they are implied ones only." 1 Wash. Real Prop. 5th ed. p. 558. Allowing, then, the defendants to be liable to the plaintiffs for the rent upon the covenant to pay rent, and admitting, as it must be admitted that the plaintiffs on the other hand are liable in damages to the defendants for not keeping their covenant to renew and permanently repair the premises, the claim of the one party must be presumed to be just equal to the claim of the other, or as nearly so as can be reasonably computed. The rule of damages would be the same in this case as if there had been an eviction. "The rents reserved in a lease, where no other consideration is paid, are regarded as a just equivalent for the use of the demised premises. Upon an eviction the rent ceases, and the lessee is thereby relieved from a burden which must be deemed equal to the benefit he would have derived from the continued enjoyment of the property." Bou. Law. Dic. *Eviction.*

It is not denied that a recovery must be had for nine small items amounting to $54.00. For that sum,

*Defendants are to be defaulted.*